_____

GREGORY S. TURNER,

                Plaintiff,                Case No. 2:17-cv-65

v.                                Honorable Gordon J. Quist

UNKNOWN GILBERTSON et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Gregory S. Turner presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Maximum Correctional Facility (AMF). He sues AMF

Correctional Officer (unknown) Gilbertson, and the following Trinity Food Service employees: Supervisor (unknown) Mattison; Supervisor and Food Steward (unknown) Hakola; and other unnamed food service staff (Unknown Part(y)(ies)).

Plaintiff's complaint consists of the allegations contained in his form complaint, as well as an attached supplemental complaint. (Compl., ECF No 1, Page ID.5.) Plaintiff alleges that, on February 12, 2016, Defendant Gilbertson delivered his food tray. Plaintiff discovered that the food tray was missing two of the three packages of crackers it was supposed to contain. Plaintiff complained to Defendant Gilbertson, who told Plaintiff that he did not have any more crackers, and Plaintiff demanded that Gilbertson call food service or to give him another tray. Gilbertson allegedly responded, "I ain't got no more food trays." (*Id.*) Plaintiff complains that other food trays were still awaiting distribution. Plaintiff also complained that he possessed a broken plastic spoon, and he demanded another.

According to Plaintiff, prisoner Howard received six packets of crackers and told Defendant Gilbertson that Plaintiff could have his extras. Gilbertson told Howard that Plaintiff had nothing coming. Plaintiff told Gilbertson that, if he did not get him more crackers and a spoon, he would write a grievance. He also told Gilbertson that, until he could see the sergeant and get his crackers and a spoon, he would hold his food slot hostage. After hearing this threat, Gilbertson did not collect Plaintiff's food tray. Plaintiff complains that, rather than skip Plaintiff's cell during tray collection, Gilbertson should have given him a direct order and called another officer to assist, as protocol required. He further contends that Defendant Gilbertson should have called the sergeant or the shift commander rather than leave the food tray in Plaintiff's cell until the morning. Plaintiff asserts that Gilbertson left the food tray in Plaintiff's cell in retaliation for Plaintiff's threat to hold

the food slot hostage and for threatening to hold his food slot hostage until he could report Plaintiff to the shift commander.

During this period, Nurse Sunberg came to Plaintiff's cell during her rounds to deliver medications. Defendant Gilbertson told Nurse Sunberg not to give Plaintiff his medications, because Plaintiff would hold the food slot hostage. Plaintiff alleges that he told Sunberg that he had only been trash-talking to Gilbertson and that he wanted his medicine, but Gilbertson told Sunberg, "No." (*Id.*, PageID.6.)

As a result of the interaction, Plaintiff was placed on food-loaf restriction.[1] Gilbertson also wrote a Class-I misconduct ticket[2] against Plaintiff for Threatening Behavior and Insolence, making the following allegations:

> While passing food [t]rays in unit 3 A-Wing, I gave prisoner Turner #160637 which locks in cell 3-121 his food tray. Prisoner Turner stated he only received one pack of crackers. I told prisoner Turner that [I] would get him another pack of crackers when I was done passing trays. Prisoner Turner [s]tated "Get me those crackers now Bitch." I told [T]urner to wait a minute and [I] would take care of it. Turner replied, "You can suck a dick until you hick up, Bitch! Open my slot and I'll beat your f*cking ass. Prisoner ID'd by frequent [contact] and unit 3 master count board.

---

[1] Food loaf is prepared by grinding up the items on the regular menu and forming them into a loaf. It is served in a wrapper, without a tray. It must meet the nutritional standards for all prison meals. A prisoner may be immediately placed on food loaf if the prisoner is misusing food, serving trays or utensils. It is "not a punitive or disciplinary sanction, but rather is an administrative action taken to maintain a clean and healthy environment." Nonetheless, policy recommends that a misconduct report be written so as to avoid arbitrary placement on food loaf, and that the charges be resolved as quickly as possible to minimize time spent on food loaf prior to the hearing. If the prisoner is found not guilty, the prisoner must immediately be returned to regular meals. *See* MICH. DEP'T OF CORR., Policy Directive 04.05.125, ¶¶ C-E (effective Feb. 22, 1990).

[2] Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA).

(Class I Misconduct Report, ECF No. 1-1, PageID.19.)  Gilbertson issued a second, Class–II misconduct the same day, February 15, 2016, for disobeying a direct order.  That misconduct report alleged the following facts:

> At approx. 1830 hours, I approached cell 3-121 solely occupied by prisoner Turner 169637 to retrieve his food trays.  Prisoner Turner said in a loud and clear voice "I ain't giving you shit back, bitch"!  I gave Turner a direct order to return his food trays to which Turner replied "Get off the wing, fu*k boy!  Get a Sargent [sic] down here if you want these trays back"!

(Class II Misconduct Report, ECF No. 1-1, PageID.28.)

On February 22, 2016, Petitioner was found guilty of the misconduct charges of insolence and threatening behavior:

> EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT
>
> AMF misconduct scheduled for hearing on prisoner at AMF with Hearing Officer at LMF through tele-video hearing.
> PRISONER'S APPEARANCE:  Prisoner appeared for his hearing.
> EVIDENCE IN RECORD:  Misconduct report, one page, read to the prisoner.
>
> * * *
>
> PRISONER'S TESTIMONY AT HEARING:  At the hearing the prisoner state, "Not guilty.  To make a long story short, Gilbertson passed out trays and gave me one packet of crackers."  He is entitled to three packets.  He told the officer, "I want you to bring me my crackers."  He told the officer not to forget the crackers or else he would take the food slot.  He also told the officer he wanted a new spoon as his spoon was cracked.  The officer never came back.  The officer then came to pick up trays and passed his cell and didn't say anything to Turner.  With the other officers they would have opened his slot and then just write him a DDO [Disobeying a Direct Order] if he took the slot hostage.  Prisoner had no other comment when asked other than to start talking about the second misconduct report he had received the following day.  Prisoner informed of the decision and sanction prior to leaving the hearings room.
>
> * * *
>
> REASONS FOR FINDINGS

INSOLENCE: On 2/15/16 the prisoner told the officer, "Get me those crackers now, bitch." This statement was made to harass and degrade the officer as there was no other purpose for his comment. Prisoner intended to harass and degrade the officer as the prisoner directed his comment to the officer when the prisoner received only one package of crackers. Prisoner claims that he never said this to the officer. He just ordered the officer several times to get his crackers. Prisoner's admission that he was demanding of the officer over crackers shows an attitude that certainly would be consistent with the officer's claims as to what had happened. Reporting staff member factual and is credible as to what occurred. Prisoner was not. Charge upheld

* * *

THREAT: Prisoner then told the officer, "You can suck a dick until you hick up, bitch. Open my slot and I'll beat your fucking ass." This expressed the intent to physically assault the officer. Prisoner intended to cause fear of physical harm in the officer as the prisoner directed his comment to the officer when the officer told him to wait a minute as far as his crackers. Prisoner claims that he never said this to the officer. Again, he is not believed. First, as already mentioned, his acknowledged demanding attitude would be consistent with the officer's claims. Prisoner made it easy to visualize him threatening the officer by what he had admitted. Second, prisoner did not present his claims in a credible manner at the hearing. Prisoner focused more on what occurred after the officer came back to pick up trays and the following day that what had happened at the time in question. Third, the fact that the officer refused to open up the prisoner's slot when the officer came back to pick up trays would be consistent with the officer's claim that the prisoner had threatened him. Reporting staff member factual and is credible as to what occurred. Prisoner was not. Charge upheld.

(Class I Misconduct Hr'g Report, ECF No. 1-1, PageID.20-21.)

Plaintiff complains that, as a result of the misconduct charges and findings, he was placed on food loaf for seven days, or twenty-one meals. He claims that "[e]ach loaf was 93% of the time half-cooked, loose, and always wet. Not only that but they were all [the same loafs]. (Compl., ECF No. 1, PageID.7-8.) At another place in his complaint, Plaintiff alleges that "these loafs [] were either half-cooked, rotten, spoiled, wet, or dried up and broken. (*Id.*, PageID.11.) Plaintiff contends that the use of the same food loaf for seven days violated policy. He also alleges that Defendants Mattison and Hakola knew they were sending the same loaves for all meals and that

the meals were either unsanitary or inedible. He alleges that these food-service Defendants were called about the food loaf servings on several occasions by correctional officers Carrol, McEntire, and Grub, but Mattison and Hakola nevertheless continued to served the food loaf.

Plaintiff alleges that Defendant Gilbertson violated his rights under the First, Eighth, and Fourteenth Amendments. He also alleges that Defendants Mattison, Hakola, and Unknown Part(y)(ies) contributed to Defendant Gilbertson's constitutional violations and violated his rights under the Eighth Amendment and prison policy.

Plaintiff seeks declaratory relief, together with over $1 million in both compensatory and punitive damages.

## Discussion

### I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    Eighth Amendment

Plaintiff contends that Defendant Gilbertson violated his rights under the Eighth Amendment by refusing to provide the missing packets of crackers and a new spoon and by refusing to allow Nurse Sunberg to open Plaintiff's food slot to deliver his medications. He also alleges that Defendants Mattison, Hakola, and Unknown Part(y)(ies) violated his Eighth Amendment rights by placing him on food loaf and serving him the same food loaf for 21 straight meals. In addition, Plaintiff contends that, for many of those meals, Defendants Mattison, Hakola, and Unknown Part(y)(ies) served him food loaf that was half-cooked, wet, dry, broken or spoiled.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

### 1.    Defendant Gilbertson

Plaintiff alleges that Defendant Gilbertson violated his Eighth Amendment rights when he refused to provide him with his extra packets of crackers and a new spoon. He also alleges that Defendant Gilbertson prevented him from receiving his medicine on one night. Further, he contends that Gilbertson violated the Eighth Amendment by refusing to pick up his meal tray, forcing him to keep a dirty tray in his cell overnight.

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate ... food."

*Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 960, 954 (6th Cir. 1987). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. Here, Plaintiff alleges that, on one occasion, he missed two packets

of crackers – far less than even one meal – and was forced to use a broken spoon to eat the same meal. Such allegations fall far short of the serious deprivation protected by the Eighth Amendment.

Plaintiff next alleges that Defendant Gilbertson prevented him from receiving his medication on one occasion. To satisfy the objective component of the deliberate-indifference standard for deprivation of medical treatment, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

Here, Plaintiff fails to allege that missing one dose of his medications caused him to suffer any physical injury or place him at risk of such injury. Instead, he alleges only that he "need[ed]/want[ed]" his medicine. Nothing about that claim suggests that missing his medication one evening represented a sufficiently serious deprivation to meet the objective component of the deliberate-indifference test.

Moreover, the subjective component of the deliberate-indifference test requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).

Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Because Plaintiff's allegations fail to demonstrate the existence of an objectively serious risk of physical injury to Plaintiff if he missed one dose of medicine, Plaintiff certainly falls short of alleging facts suggesting that Defendant Gilbertson was aware of such risk and disregarded it. He therefore fails to meet the subjective component of the test.

For all these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendant Gilbertson.

2.     Defendants Mattison, Hakola, and Unknown Part(y)(ies)

Plaintiff alleges that Defendants Mattison, Hakola and Unknown Part(y)(ies) violated his rights under the Eighth Amendment by placing him on food loaf and feeding him the same food loaf at every meal for a week. He also alleges that the food loaf served to him was either half-cooked, wet, dry, broken or spoiled.

To the extent that Plaintiff alleges that Defendants Mattison, Hakola, and Unknown Part(y)(ies) placed him on food loaf and served him the same food loaf for 21 straight meals, he fails to state a claim. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348. With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Sixth Circuit has repeatedly held that a diet of food loaf does not violate the Eighth

Amendment because nutritional and caloric requirements are met.  *See, e.g.*, *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990).  As a result, to the extent that Plaintiff alleges that his food was the same at every meal or was wet, dry or broken, he fails to state a claim, because his complaint is merely an aesthetic one.  *Cunningham*, 567 F.2d at 659-60.

Moreover, although Plaintiff suggests that his food was raw, most of the time he contends, as he did in his grievance, that the food was sometimes "half-cooked" or "rawish."  (*See* Compl., ECF No. 1, PageID.4 (half-cooked and rawish), 7-8 (half-cooked), 11 (half-cooked), 12 (half-cooked, rawish); Grievance, ECF No. 1-1, PageID.25 (half-cooked).)  Plaintiff describes the reason he believed them to be "rawish" was that they had "liquid still in them."  (Compl., ECF No. 1, PageID.12.)  Plaintiff claims that the loaves were prepared, cut in portions, and frozen for 30 days, to be served when ordered.  Despite Plaintiff's complaints about the food loaf being half-cooked, he provides no basis for believing that, even if the loaves were not thoroughly heated, the loaves presented any danger to his health.

Plaintiff does allege in his complaint that some of the loaves were spoiled or rotten.  However, in his grievance, Plaintiff complained only that the food loaves were "half cooked and untasteful."  (Grievance, ECF No. 1-1, PageID.25.)  And he complained that the loaves should have been prepared from the daily menu, not frozen for 30 days.  Plaintiff's factual allegations therefore are inconsistent with his grievance and appear intentionally exaggerated to suggest that some of the frozen and unpalatable food loaf servings about which he complained in his grievance were spoiled.

Moreover, even if Plaintiff's complaint can be construed to suggest that he received spoiled food loaf on occasion, his complaint fails to allege the sort of serious deprivation that rises

to the level of an Eighth Amendment violation.  Plaintiff specifies in his complaint that his food loaf was "93% of the time half-cooked, loose, and always wet." [3]  (Compl., ECF No. 1, PageID.8.)  As a result, it could only have been spoiled on a few occasions.  In numerous cases, courts have held that a single incident or occasional instances of spoiled food or food poisoning does not amount to an Eighth Amendment violation.  *See Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010) ("A single incident of food poisoning . . . does not constitute a violation of the constitutional rights of the prisoner affected." (footnote omitted)); *Charvis v. Fairman*, 51 F.3d 275 (7th Cir. 1995) (occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs); *Balcar v. Smith*, No. 3:16-CV-P428-DJH, 2017 WL 380931, *5 (W.D. Ky. Jan. 26, 2017) (holding that occasional service of spoiled food does not violate Eighth Amendment); *Velthuyson v. Aramark Corr. Servs., Inc.*, No 2:24-cv-192, 2017 WL 236191, *2 (W.D. Mich. Jan. 19, 2017) (a number of isolated instances of being served spoiled or cold food do not constitute a sufficiently serious deprivation to implicate the Eighth Amendment); *Wilson v. Byrd*, No. 15-00160-KD-N, 2016 WL 1573265, at *7 (S.D. Ala. Mar. 14, 2016) ("Taking Plaintiff's allegation as true, that he became ill from tainted food served at Holman on December 26, 2013, does not, alone, amount to a constitutional deprivation."); *Bennett v. Misner*, No. 02-1662-HA, 2004 WL 2091473, at *20 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eight Amendment violation."), *aff'd*, 180 F. App'x 732 (9th Cir. 2006); *Seymour/Jones v. Oldt*, No. 90-1583, 1990 WL 29721, at *1 (E.D. Pa. Mar. 16, 1990) (holding that the plaintiff failed to state a claim because "a single unintentional instance of food poisoning, which, though undoubtedly

---

[3]It is difficult to credit Plaintiff's allegation that the food loaf was at times "dried up[] and crumbled" (ECF No. 1, PageID.4), when he also declares that it was "always wet" (*id.*, PageID.8).

unpleasant, does not rise to the level of a violation of his civil rights"). Even accepting Plaintiff's dubious allegations as true, he fails to demonstrate a constitutional injury under the Eighth Amendment.

In sum, Plaintiff's allegations against the Defendants Mattison, Hakola, and Unknown Part(y)(ies) fail to state an Eighth Amendment claim.

B.      Fourteenth Amendment – Due Process Clause

Plaintiff alleges that Defendant Gilbertson's conduct violated the Fourteenth Amendment, though he does not specify what part of that Amendment he believes was violated. However, from Plaintiff's allegations, the Court assumes that he seeks to bring a procedural due process claim against Defendant Gilbertson, based on Gilbertson's failure to follow policy in handling Plaintiff's threat to hold his food slot hostage. Plaintiff also appears to suggest that Defendants Mattison, Hakola and Unknown Part(y)(ies) failed to follow policy by placing him on food loaf and serving him food loaf that had been frozen rather than preparing new, fresh food loaf from each day's meals.

Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

- 14 -

Moreover, Plaintiff enjoys no constitutional or state-created right to be free from a temporary diet of food loaf, even the same type of food loaf. The Supreme Court has held that state created liberty interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483 (1995); *see also Rimmer-Bey v. Brown*, 62 F.3d 789-790-91 (6th Cir. 1995). A temporary food loaf diet is not an atypical and significant hardship for segregation prisoners who have engaged in misconduct. *See Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541 (6th Cir. Feb. 1, 1996); *Johnson v. Gummerson*, No. 99-0071, 1999 WL 822523, at *1 (2d Cir. Sept. 24, 1999). Plaintiff, therefore, fails to state a claim for violation of his due process rights.

### C.     Retaliation

Plaintiff next alleges that, because he threatened to file a grievance against Defendant Gilbertson, Gilbertson retaliated against him by refusing to get Plaintiff's crackers, refusing to pick up Plaintiff's dinner tray, and falsely accusing him of misconduct charges. Plaintiff also appears to allege that Defendants Mattison, Hakola and Unknown Part(y)(ies) retaliated against him by placing him on food loaf and serving him the same, distasteful food loaf for 21 straight meals, because Plaintiff had told Defendant Gilbertson of his intent to file a grievance.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise

of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff threatened to file a grievance against Gilbertson for getting him the missing crackers. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Arguably, a threat to file a grievance may, in some circumstance be constitutionally protected. However, Plaintiff's statement about his intent to file a grievance did not end there. As Plaintiff admits, he simultaneously told Defendant Gilbertson that he intended to hold his food slot hostage unless the sergeant came or Plaintiff received his crackers. Such conduct amounts, at a minimum, to insolence, in violation of prison rules. MICH. DEP'T OF CORR., Policy Directive 03.03.105, Attach. B (defining "insolence" as "[w]ords, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee."). Indeed, Plaintiff was found guilty of that offense (and of the misconduct of "Threatening Behavior") for both his admitted conduct and the offensive and vulgar language he used against Defendant Gilbertson. The use of language that violates prison rules is not protected conduct for purposes of a retaliation claim. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that calling an official a "foul and corrupt bitch" was not protected conduct.

Moreover, even assuming that Plaintiff's threat to file a grievance could be considered outside its context and deemed protected conduct, Defendant Gilbertson's denial of crackers and refusal to pick up a dinner tray fall short of adverse action that would deter a person

of ordinary firmness from exercising his First Amendment rights. Such actions are far too minor to deter a reasonable person from exercising his rights.

As a consequence, only Plaintiff's remaining allegation of adverse action by Defendant Gilbertson – that Gilbertson filed a retaliatory false misconduct charge – requires consideration at the third step. First, as discussed above, Plaintiff admitted that he made his threat to file a grievance together with a statement that he would hold his food slot hostage unless and until he could see a supervisor and get his crackers. In the absence of other evidence of retaliatory motive, and given the far more likely possibility that Gilbertson simply charged Plaintiff with misconduct because he committed that misconduct, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct[;] the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

Second, Plaintiff's version of the events of February 15, 2016, was wholly rejected by the hearing officer who reviewed his Class-I misconduct. Indeed, the hearing report concluded in no uncertain terms that Plaintiff was not credible. The hearing officer found that Plaintiff had admitted that he had repeatedly "ordered" Defendant Gilbertson to deliver his crackers, supporting the finding that Plaintiff was insolent. (Misconduct Hr'g Report, ECF No. 1-1, PageID.20.) In addition, the hearing officer found that Plaintiff had done much more than be insolent; Plaintiff had used profane language and had threatened to beat Gilbertson.

In *Peterson v. Johnson*, 714 F.3d 905, 908 (6th Cir. 2013), Peterson, a Michigan prisoner, claimed that two corrections officers violated his Eighth Amendment right against cruel and unusual punishment. Peterson's claim arose from an incident in which officer Johnson and another officer were trying to put Peterson in his cell. *Id*. at 908. During the incident, officer Johnson's hand became stuck in the cell just as the door began to close, causing Johnson to

frantically call out the other officer to stop the door from shutting on his hand. *Id*. The sole factual dispute in the case was why Johnson's hand was in the cell. Peterson claimed that Johnson put his hand in the cell as an excuse to pull Peterson out and assault him, while Johnson maintained that Peterson grabbed Johnson's hand and pulled it into the cell. *Id*. Peterson was charged with a major misconduct for assault and battery as a result of the incident. *Id*. The hearing officer concluded that Peterson grabbed Johnson's hand and found him guilty of the misconduct.

The Sixth Circuit considered whether the factual finding of the hearing officer that Peterson grabbed Johnson's hand had a preclusive effect on Peterson's Eighth Amendment claim. To resolve the question, the Court looked to the Supreme Court's decision in *University of Tennessee v. Elliott*, which explained that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. 788, 799 (1986) (citation, internal quotation marks, and edits omitted). The *Elliott* Court identified four criteria for according preclusive effect: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before him; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Id.* at 912-13. After applying the four criteria to the Michigan Department of Corrections major misconduct hearing process, the Sixth Circuit in *Peterson* concluded that the Michigan courts would grant preclusive effect to the hearing officer's finding that Peterson grabbed Johnson's hand. *Peterson*, 714 F.3d at 917.

A year later, in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), the Sixth Circuit faced the same question in another § 1983 civil rights action alleging excessive use of force. The

Court limited its holding in *Peterson* and held that the question of preclusion had to be decided on a case-by-case basis. The court stated in part:

> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case. Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so – not just in theory, but in practice. *Id*. at 916–17. It likewise turns on the court's "sense of justice and equity," *Blonder–Tongue Labs., v. Univ. of Ill. Found*., 402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d 398, 404-05. The court further found that the record had not been sufficiently developed for the court to resolve the preclusion issue on appeal. Consequently, the court remanded the case to the district court to consider the merits of the preclusion argument. *Id*. at 405. The Sixth Circuit directed the district court to give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer. The court further instructed that "[n]umerous inquiries may be relevant to the district court's analysis, including why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either Roberson or Torres." *Id*.

A number of courts in this circuit have considered whether the *Roberson/Peterson* analysis applies to claims that an officer issued a false misconduct ticket. *See Cannon v. Bernstein*, No. 09-14058, 2015 WL 5719665 (E.D. Mich. Sept. 30, 2015) (holding that, in determining whether the results of a finding of guilt on a major-misconduct ticket precludes a claim that an officer falsely

and maliciously accused the prisoner of the misconduct, the court must apply the standards set forth in *Peterson* and *Roberson*); *Moore v. Larson*, No. 2:15-cv-140, 2016 WL 7438059, at *2 (W.D. Mich. Dec. 27, 2016) (holding that a retaliatory misconduct is governed by the rule of *Peterson* and *Roberson)*; *Thomas v. Thomas*, No. 11-12193, 2016 WL 5799342, at **2-4 (E.D. Mich. Oct. 5, 2016) (applying *Roberson* to a claim of retaliatory misconduct, where the prisoner-plaintiff sought summary judgment on the ground that he was found not guilty of the misconduct, but holding that misconduct finding was not preclusive because defendant did not have incentive to vigorously contest the misconduct outcome); *Jones v. Loop*, No. 2:15-cv-203, 2016 WL 3735783, at *5 (W.D. Mich. Jul. 13, 2016) (applying *Peterson* to retaliatory misconduct claim and dismissing because of guilty finding); *Stein v. Lalonde*, No. 2:16-cv-181, 2016 WL 6310281, at *6 (W.D. Mich. Oct. 28, 2016).

Here, as in *Peterson* and *Roberson*, Plaintiff was charged with a major misconduct and his hearing was conducted by an independent hearing officer. Applying *Peterson* and *Roberson* to the instant case, the Court concludes that Plaintiff both had the incentive to litigate and did litigate the reasons behind Gilbertson's Class-I misconduct charges. While Plaintiff admitted that he had repeatedly ordered Gilbertson to get him crackers, he vehemently denied that he had used vile language and had threatened Gilbertson. The hearing officer, however, found, based both on Plaintiff's admissions and attitude and Defendant Gilbertson's factual credibility, that Plaintiff had been insolent and demanding and had threatened Gilbertson. In other words, the hearing officer found that the misconduct charge was not false and that Plaintiff had in fact committed two different infractions. As a result, Plaintiff's suggestion that Defendant filed a false misconduct is precluded by the hearing officer's determination. *See Roberson*, 770 F.3d 398, 404-05; *Peterson*, 714 F.3d at 917.

Plaintiff next alleges that Defendants Mattison, Hakola and Unknown Part(y)(ies) retaliated against him by placing him on food loaf and serving him the same food loaf at every meal for seven days. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Here, Plaintiff alleges only the ultimate fact of retaliation. He has not presented any facts to support his conclusion that Defendants Mattison, Hakola, and Unknown Part(y)(ies), who were employed by Trinity Food Service, retaliated against Plaintiff because he threatened to file a grievance against Defendant Gilbertson, who worked as a custody officer in segregation. In fact, Plaintiff utterly fails to allege that Defendants Mattison, Hakola, and Unknown Part(y)(ies) even knew Gilbertson, much less that they had a relationship with Gilbertson that would have caused them to share a retaliatory motive. Plaintiff's conclusory allegations of improper motive "do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  April 25, 2017                                     _____/s/ Gordon J. Quist_____
                                                          GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE